Modified.

23 C.C.P.A. (Patents)

### In re McKEE.

### Patent Appeal No. 3568.

Court of Customs and Patent Appeals. Jan. 27, 1936.

GARRETT and LENROOT, Associate Judges, dissenting in part.

———◆———

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office denied all the claims, numbered 1 to 13, inclusive, of appellant's application for a patent relating to methods of marking meats. The decision of the examiner was affirmed by the Board of Appeals, and appeal has been taken here.

Claims 1 and 12 are illustrative and follow:

"1. The method of marking edible carcasses from which the hide, skin or hair has been removed which consists in puncturing into and below the surface of the carcass a plurality of like identifying marks arranged in successive order transversely of the lines on which the meat is customarily cut for retailing substantially as and for the purpose described; said marks being of a color contrasting with the color of the surface of the said carcass."

"12. The method of marking a wholesale part of an edible animal carcass, which consists of applying thereto a band of markings of a color contrasting with the color of the surface of said carcass, said band of markings running lengthwise of the piece and made up of individual indicia arranged along the band whereby the usual subdivision of the piece will disclose such indicia on each section of the meat, and so formed as to practically prevent erasure of the indicia and to reduce likelihood of spreading of the marking material on the surface of the meat."

Appellant's application discloses that his method consists of marking with an instrument such as was disclosed in his copending application for a patent, serial No. 208,668, filed July 27, 1927, in which the claims are directed to the apparatus involved. The apparatus contains a marking cylinder or roller together with a frame and handle. Marking needles are disposed around the periphery of the roller in suitable groups to repeat the desired mark, as the roller is moved along the surface of the meat. The needles to make the desired mark, such as "S——P——," are so arranged on the roller that the mark will be imprinted upon the meat in such spaced relation as to cause the marking to occur on each slice or cut of the meat. The ends of the needles come in contact with a feeding ink roller, the ink being

wiped off the needles as they penetrate the meat and the ink being embedded near the surface of the tissues of the meat.

The references relied upon by the examiner and the board are:

Stevens, 976,225, November 22, 1910.
Brough, 992,732, May 16, 1911.
Conway, 996,004, June 20, 1911.
Waite, 1,188,588, June 27, 1916.
Henry, 1,248,856, December 4, 1917.
Dauley et al., 1,448,994, March 20, 1923.
Golding, 1,481,864, January 29, 1924.
Naylor, 1,699,012, January 15, 1929.
Fiedler, 1,704,124, March 5, 1929.

In this court the appeal has been dismissed, upon appellant's motion, as to claims 3, 4, 5, and 6. Said claims contained a limitation as to the use of needles. Claims 1, 2, 7, 8, 9, 10, 11, and 12 (all the claims except claim 13) constituted the counts of interference No. 60,471 in which the present application was involved, and said claims were, by the Examiner of Interferences, held to be unpatentable over the above-cited references. This holding was later affirmed by the Board of Appeals. In the decision which we are now considering the board quoted from its said former decision as follows: "We have carefully considered appellant's brief and while we are not unmindful of the advantages of the use of appellant's process, it does however seem to us that the common use of identifying marks in such places on an article that when the article is divided the mark will appear on each section would obviously suggest the use of identifying marks arranged in such positions on a carcass that when the cuts were made each cut would bear the mark. While the appliances for embedding ink in animal tissues cited by the Examiner appeared to be intended for use with living tissues it seems obvious that these appliances could be readily changed to adapt them for use with the tissues of a carcass, and further that the use with such appliances of an ink of a color contrasting with the carcass would be merely a matter of choice. We must therefore agree with the examiner that the counts are not patentable."

In the instant decision, it further stated:

"This prior decision thus states fully our position in regard to the above claims. We have found no reason to change our views with respect to them in this appeal.

"Claim 13 has been held to be unpatentable for the same reasons because it is drawn along the same lines as the above group of claims. We are in agreement with the Examiner in this rejection."

Conway discloses a hand stamp for marking isolated individual marks on meat carcasses, the marker being provided with blunt-ended pins which do not penetrate the meat.

Waite discloses a brake lining which is provided with a series of transverse marks which are spaced apart at uniform distances of predetermined length. The invention is intended to save the time of measurement and to enable customers to check the length of the strip which they have purchased.

Henry shows a printing machine for printing articles united in serial relation so that each article will receive at least one imprint.

Dauley et al. shows a check protector which includes a check perforating and printing roller which is inked so that by running the device over a check, a series of marks is produced.

Golding relates to an advertising means in which a bolt of cloth has a name impressed upon the selvage thereof at repeated intervals.

Fiedler relates to a motion picture print and the method of making same. The marks are repeated at intervals on the film.

It will be noted that the foregoing references, relating to marking of articles, do not convey the idea of penetrating below the surface of the article marked, and that one of them only (Conway) relates specifically to the marking of meat.

Stevens discloses a means for marking livestock, and his device consists of a block containing needles which are inked to make the mark. He teaches that the penetration will be made into the epidermis and not through the dermis of the skin of the animal.

Brough discloses a device for tattooing live animals in which needles having ducts to carry the marking ink penetrate the portion of the animal to be marked.

Naylor also relates to the marking of livestock and poultry by the use of ink placed upon needles which are "applied to the membrane to be marked without in-

juring the adjacent muscles." The device is so arranged that guides prevent the needles from entering the muscular portion, and the inventor explains in his specification that after the ink is forced downwardly through the openings in the needles into the openings of the skin of the membrane, a fabric is rubbed over the upper surface of the membrane and the ink is thoroughly rubbed into the perforations.

In this court the appellant relies strongly for patentability of the appealed claims upon the provision contained in all the claims, except claim 12, requiring a penetration below the surface of the carcass.

As we understand the decision of the board, it is to the effect that in view of the patents to Stevens, Naylor, and Brough, which disclose appliances for tattooing or marking living animals, it would not require invention to mark meat from skinned, dead animals, with marking similar to that shown in the other references, by penetrating into the carcass or muscular portion of the meat.

We are constrained to disagree with the board in its holding that the teachings of the references singly or combined would suggest appellant's method or that it would not require invention to modify the devices of Stevens, Naylor, and Brough and utilize them in marking meat carcasses. See In re McKee, 23 C.C.P.A. (Patents) —, 79 F.(2d) 905, which involved claims for a method of marking carcasses below a surface coating of fell. It is our view that Stevens, Naylor, and Brough solved a wholly different problem from that solved by the applicant. It is not clear to us that projecting small needles into the skin of the wing of a living fowl or into a living unskinned animal, so as to make an identifying mark, would suggest the desirability or usefulness of marking meat by penetrating below the surface of a carcass. It is obvious that the tissue of the living animal differs greatly from that of the skinned carcass which appellant marks, and it also seems to us that the results and appearance of the marking would be quite different.

All the claims now before us require that the ink be placed below the surface of the meat except claim 12. In claim 12 is found the following: "And [such indicia] so formed as to practically prevent erasure of the indicia and to reduce likelihood of spreading of the marking material on the surface of the meat." We do not think this claim is necessarily limited to depositing the marking material below the surface of the animal carcass, and conclude, therefore, that it was properly rejected by the tribunals below upon the references cited.

The decision of the Board of Appeals is reversed as to claims 1, 2, 7, 8, 9, 10, 11, and 13, and affirmed as to claim 12.

Modified.

GARRETT and LENROOT, Associate Judges, dissent except as to claim 12.